IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT STIER, Individually and On Behalf of All Others Similarly Situated, | Case No.: _____ |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |
| DATAWATCH CORPORATION, CHRISTOPHER T. COX, DONALD R. FRIEDMAN, THOMAS H. KELLY, DAVID C. MAHONEY, JOAN MCARDLE, MICHAEL A. MORRISON, RICHARD DE J. OSBORNE, and RANDALL P. SEIDL, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Robert Stier ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and all other similarly situated public stockholders of Datawatch Corporation ("Datawatch" or the "Company") against Datawatch and the members of the Datawatch's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Datawatch, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d)

("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") by Altair Engineering Inc. ("Altair") through Dallas Merger Sub, Inc., a Delaware corporation and wholly-owned subsidiary of Altair ("Merger Sub"), to acquire all of the issued and outstanding shares of Datawatch (the "Proposed Transaction").

2. On November 5, 2018, Datawatch, Altair, and Merger Sub entered into an Agreement and Plan of Merger (the "Merger Agreement"), whereby each holder of Datawatch common stock will receive $13.10 per share in cash (the "Offer Price").

3. On November 14, 2018, in order to convince Datawatch stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the financial analyses conducted by the Company's financial advisor, GCA Advisors, LLC ("GCA"), in support of their fairness opinion; (ii) the potential conflicts of interest faced by the Board; and (iii) the background process leading up to the Proposed Transaction.

4. The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of the day on December 12, 2018 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the Expiration Date so they can properly determine whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Datawatch

stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Datawatch's common stock trades on the Nasdaq stock exchange, which is headquartered in this District, which renders venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Datawatch common stock.

10. Defendant Datawatch is a Delaware corporation and maintains its principal executive offices at 4 Crosby Drive, Bedford, Massachusetts 01730. Datawatch designs, develops, markets, and distributes business computer software products to self-service data preparation and visual data discovery markets in the United States and internationally. The Company's common stock is traded on the NASDAQ under the ticker symbol "DWCH."

11. Defendant Christopher T. Cox is, and has been at all relevant times, a director of the Company.

12. Defendant Donald R. Friedman is, and has been at all relevant times, a director of the Company.

13. Defendant Thomas H. Kelly is, and has been at all relevant times, a director of the Company.

14. Defendant David C. Mahoney is, and has been at all relevant times, a director of the Company.

15. Defendant Joan McArdle is, and has been at all relevant times, a director of the Company.

16. Defendant Michael A. Morrison is, and has been at all relevant times, a director of the Company, and also serves as Datawatch's President and Chief Executive Officer ("CEO").

17. Defendant Richard de J. Osborne is, and has been at all relevant times, a director of the Company, and also serves as Chairman of the Board.

18. Defendant Randall P. Seidl is, and has been at all relevant times, a director of the Company.

19. The defendants identified in paragraphs 11 through 18 are collectively referred to

herein as the "Individual Defendants" and/or the "Board," collectively with Datawatch the "Defendants."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Datawatch (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

21.     This action is properly maintainable as a class action because:

(a)     the Class is so numerous that joinder of all members is impracticable. As of November 6, 2018, there were 12,736,747 shares of Datawatch common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Datawatch will be ascertained through discovery;

(b)     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.      whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(d)(4) and 14(e) of the Exchange Act;

ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    whether Plaintiff and other members of the Class will suffer

irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I. Background of the Company and the Proposed Transaction**

22. Datawatch designs, develops, markets, and distributes business computer software products to self-service data preparation and visual data discovery markets in the United States and internationally. The Company's software solutions allow organizations to access, analyze, and visualize their information. Datawatch's products include Datawatch Monarch, a self-service data preparation tool to explore, manipulate, and merge new data sources; Datawatch Monarch

Swarm, a browser-based platform offers team-driven data preparation and centralized data marketplace for speed collaboration; Datawatch Panopticon designed for situations for data analysis; and Datawatch Report Mining Server, a solution for data preparation capabilities. The Company also provides implementation and support of its software products, as well as training on their use and administration. Datawatch sells its products to end-users through distributors, value-added resellers, original equipment manufacturers, and strategic partners.

23. Altair, together with its subsidiaries, provides enterprise-class engineering software worldwide. Altair operates through two segments, Software and Client Engineering Services. Altair's integrated suite of multi-disciplinary computer aided engineering software optimizes design performance across various disciplines, including structures, motion, fluids, thermal management, electromagnetics, system modeling and embedded systems, as well as provides data analytics and true-to-life visualization and rendering.

24. On November 11, 2018, Datawatch and Altair issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Altair Announces Agreement to Acquire Datawatch**
>
> TROY, Michigan and BEDFORD, Massachusetts – November 5, 2018 – Altair (Nasdaq: ALTR) and Datawatch Corporation (Nasdaq-CM: DWCH) today announced the signing of a definitive merger agreement under which Altair has agreed to acquire Datawatch. Under the terms of the agreement, Altair will pay $13.10 per share in cash, representing a fully diluted equity value of approximately $176 million. The transaction was unanimously approved by the Boards of Directors of both companies.
>
> James Scapa, Altair's Founder, Chairman, and Chief Executive Officer, commented, "Bringing Datawatch into Altair should result in a powerful offering consistent with our vision to transform product design and decision making by applying simulation, data science and optimization throughout product lifecycles. We see a convergence of simulation with the

application of machine learning technology to live and historical sensor data as essential to creating better products, marketing them efficiently, and optimizing their in-service performance. Datawatch is a great team of people with best-in-class products, and we look forward to their joining us."

Altair believes the acquisition of Datawatch is compelling for a number of reasons, including:

- The data analytics and data science markets are evolving rapidly to leverage many of the same technologies, such as high-performance computing and visualization, as Altair has been leveraging in simulation for many years.
- Datawatch's solutions, which include data prep, data prediction, and real-time high-volume data visualization technologies, are highly relevant and applicable to almost any company and vertical market.
- There is strong opportunity to cross-sell Datawatch products into Altair's primarily manufacturing customer base, which will be facilitated by applying Altair's proven licensing models to Datawatch solutions.
- Datawatch's historical strength has been in the financial services and capital markets sectors. There is meaningful opportunity to disrupt these markets and expand usage by making it easier to access products through Altair's licensing model, and there is a cross-sell opportunity with some relevant Altair products in these markets.

Michael Morrison, Chief Executive Officer of Datawatch, added, "The Datawatch team is excited to join Altair and benefit from its long track record of success with developing and bringing to market highly differentiated software technology across diverse industry verticals. We feel great about the cultural alignment and look forward to driving continued innovation in our market-leading solutions as an integral part of Altair's vision."

**Terms of the Transaction**

Under the terms of the definitive merger agreement, Altair will commence a tender offer within ten business days to acquire all of the outstanding shares of common stock of Datawatch for $13.10 per share in cash. This represents a 35% percent premium to the closing price of Datawatch's common stock on November 2, 2018. The tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Datawatch common stock and the

expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the closing of the tender offer, a wholly-owned subsidiary of Altair will merge with and into Datawatch, with each share of Datawatch common stock that has not been tendered being converted into the right to receive the same $13.10 per share in cash offered in the tender offer. The transaction is anticipated to close in the fourth quarter of 2018.

Funding for the transaction will come primarily from cash, coupled with utilization of borrowings under Altair's existing credit facility.

RBC Capital Markets, LLC is acting as exclusive financial advisor to Altair. GCA Advisors is acting as exclusive financial advisor to Datawatch. Legal counsel for Altair is Lowenstein Sandler LLP and legal counsel for Datawatch is Choate Hall & Stewart LLP.[1]

## II.  The Materially Incomplete and Misleading Recommendation Statement

25.   On November 14, 2018, the Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Datawatch's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer.

26.   First, the Recommendation Statement describes GCA's fairness opinion and the various valuation analyses performed in support of their opinion. However, the description of GCA's fairness opinion and their analyses fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Datawatch's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on GCA's fairness opinion in determining whether to tender their shares in the Proposed

---

[1]   Datawatch Corporation, Current Report (Form 8-K), at Exhibit 99.2 (Press release dated November 5, 2018.) (November 5, 2018)

Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Datawatch's common stockholders.

27. With respect to GCA's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in their analysis: (i) Datawatch's net operating losses; and (ii) the inputs and assumptions underlying the calculation of the terminal growth rates ranging from 2.0% to 4.0%.  *See* Recommendation Statement at 31.

28. These key inputs are material to Datawatch's common stockholders, and their omission renders the summary of GCA's *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….* This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Datawatch stockholders cannot evaluate for themselves the reliability of GCA's DCF analysis, make a meaningful determination of whether the implied per share value ranges reflect the true value of the Company or was the result of GCA's unreasonable judgment, and make an informed decision regarding whether to tender their shares in the Proposed Transaction.

29.     With respect to GCA's premiums paid analysis, the Recommendation Statement fails to disclose the identities of the 35 U.S. publicly traded technology companies that were considered and the individual premiums paid in each transaction.  *See* Recommendation Statement at 32.  The omission of this information renders the summary of this analysis and the calculated implied per share value ranges materially misleading.  A fair summary of a premiums paid analysis requires the disclosure of the identities of the individual transactions considered and their respective premiums; merely providing the 25th and 75th percentiles that a banker applied is insufficient, as Datawatch stockholders are unable to assess whether the banker considered comparable transactions, or, instead, only considered specific transactions in order to make the premium being touted to Company stockholders and the Offer Price appear more favorable.

30.     Second, the Recommendation Statement omits material information regarding potential conflicts of interest faced by the Company's officers and directors.

31.     Specifically, the Recommendation Statement fails to disclose the timing and nature of all communications concerning future employment of the Company's officers and directors, in addition to the identities of the parties who participated in such communications.

32.     Indeed, the Recommendation Statement notes that "[a]s of the date of this Schedule 14D-9, Altair **has not finalized any arrangements with the executive officers of Datawatch with respect to continued employment with Altair** following the effective time of the [Proposed

Transaction],"  Recommendation Statement at 8 (emphasis added), but entirely fails to disclose **when** Altair **initiated** discussions with certain Company officers and directors, and the identities of the individuals who participated in such discussions.  In fact, in press release announcing the Proposed Transaction, Defendant Michael Morrison—Datawatch's CEO—stated that "[t]he Datawatch team is excited to **join Altair**." *See supra* (emphasis added).

33. If such negotiations took place, the particular individuals who are negotiating continued employment with Altair and the timing and nature of such discussions must be disclosed to Datawatch stockholders.  Indeed, the timing and nature of post-close employment provides key insight concerning motivations that would prevent fiduciaries from acting solely in the best interests of a company's stockholders.  If certain members of the Board negotiated for their own interests ahead of stockholder compensation, stockholders would certainly find such information material.

34. Accordingly, if such negotiations took place, the failure to disclose identities of those individuals and the timing and nature of the negotiations renders the statements made in the *Background of the Transaction*, *Post-Employment Compensation*, and *Arrangements between Datawatch and its Executive Officers, Directors and Affiliates* sections of the Recommendation Statement materially incomplete and misleading.

35. Finally, the Recommendation Statement omits material information concerning the background process leading up to the Proposed Transaction and entry into the Merger Agreement.

36. Specifically, the *Background of the Transaction* section of the Recommendation Statement states:

> On October 29, 2018, Mr. Scapa contacted Mr. Morrison by telephone to discuss the **potential tax liability** and the possibility of reducing the deal consideration to account for the identified **potential tax exposure. On October 30, 2018, Altair requested a**

> **$7 million reduction in deal consideration to account for the identified tax exposure.** Datawatch and Altair engaged in further discussions regarding this matter and, on November 1, 2018, the Datawatch Board met to consider the request…Subsequent to conclusion of the Datawatch Board meeting on November 1st, Mr. Morrison and the chief executive officer of Altair discussed the matter and **agreed that deal consideration be reduced by $5.5 million, or $0.40 per share**, and that the identified key material terms in the merger agreement be resolved in a manner satisfactory to Datawatch.

Recommendation Statement at 18.

37. However, the Recommendation Statement fails to disclose what "potential tax liability" Altair identified that ultimately resulted in a $5.5 million reduction in the Proposed Transaction's consideration. Indeed, after identifying the potential tax liability, Altair requested a **$7 million** reduction. Moreover, the Recommendation Statement fails to disclose whether the Board, Company management, or GCA evaluated the likelihood of Datawatch's tax exposure, and if so, the details surrounding such evaluations (*e.g.,* the dates on which the potential tax liability was considered and any analyses that were prepared).

38. Datawatch stockholders are entitled to an accurate, full, and fair characterization of the process leading up to the Proposed Transaction, particularly in light of the fact that the Company's potential tax exposure resulted in the Board agreeing to a $5.5 million reduction in the Proposed Transaction's consideration **only 1 week** before the Merger Agreement was executed.

39. In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Expiration Date, Plaintiff and the other members of the Class will be unable to make an informed decision regarding whether to tender their shares in the Proposed Transaction, and they are thus threatened

with irreparable harm, warranting the injunctive relief sought herein

## COUNT I

### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

42. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to Company stockholders via the Tender Offer and the intrinsic value of the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but

failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

46.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

47.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act
and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

50.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.  Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

51.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

52.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

53.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

54.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because

it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.  Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

55. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of Datawatch within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Datawatch and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Recommendation Statement.

60.  By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

61.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d)(4) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class have suffered damage and actual economic losses (*i.e.*, the difference between the Offer Price and the true value of Datawatch shares) in an amount to be determined at trial.

62.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying

Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Tender Offer, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 26, 2018

**MONTEVERDE & ASSOCIATES PC**
*/s/ Juan E. Monteverde*
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*